**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 1:19-cr-00072 (JDB)** |
| | : | |
| **DONZELL ROLANDAS GIBSON** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S AMENDED MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits this amended Memorandum in support of its Motion for

Pretrial Detention.[1]

The defendant, DONZELL GIBSON, who is charged by indictment with making false

statements on passport applications and aggravated identity theft, made his initial appearance on

March 27, 2019, at which time Magistrate Judge Meriweather ordered that GIBSON be held

pending a detention hearing scheduled for April 1, 2019.  At the initial appearance, GIBSON's

Pretrial Services Report noted his eligibility for temporary detention under

18 U.S.C. § 3142(d)(1)(A)(iii) (defendant on parole) and 18 U.S.C. § 3142(f)(1)(D) (defendant

qualifying as a recidivist), and concluded that "no conditions or combination of conditions can

reasonably assure the defendant's appearance or safety to the community."  The Government also

moved the Court to detain GIBSON temporarily because this case involves "a serious risk that [the

defendant] will flee," as provided for by 18 U.S.C. § 3142(f)(2)(A).

---

[1]     The Government submits this filing in advance of the April 1, 2019, detention hearing to
assist the Court in its determination regarding pre-trial detention.  This filing updates and amends
the Government's detention memorandum that was filed in advance of the defendant's initial
appearance on March 27, 2019.

Now before the Court is the question of whether there are conditions of release that will reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e). There are no such conditions. GIBSON is, and was at the time of one of the offenses charged in the indictment (Count 3), on supervised release in a D.C. Superior Court case, and GIBSON's supervision officer is presently seeking a parole warrant for GIBSON, based on his loss of contact and new criminal conduct. Moreover, notwithstanding that GIBSON turned himself in to the Metropolitan Police Department on March 27, 2019, the facts alleged in this case—as well as GIBSON's history of criminal activity, failures to appear, and failures to comply with court-ordered conditions—all weigh strongly in favor of detention based on his risk of flight. Accordingly, a preponderance of the evidence demonstrates that GIBSON's appearance cannot be assured, and he should be detained.[2]

## APPLICABLE LAW

A defendant must be detained pending trial if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e)(1). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *see also United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Furthermore, at a

---

[2] Should the Court disagree, the Government would request that the Court continue to temporarily detain the defendant, under 18 U.S.C. § 3142(d)(1)(A)(iii), for a ten-day period beginning on the day of his initial appearance (March 27, 2019) and excluding Saturdays, Sundays, and holidays—that is, until April 10, 2019—to allow the U.S. Parole Commission an opportunity to take GIBSON into custody.

detention hearing, the government may present evidence by way of a proffer.  *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required, the Court must take into account the available information concerning: the nature and circumstances of the charged offenses; the weight of the evidence against the defendant; and the history and characteristics of the defendant.  18 U.S.C. § 3142(g); *see United States v. Bikundi*, 47 F. Supp. 3d 131, 133 (D.D.C. 2014); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 & n.1 (D.D.C. 2013).

If the Court determines that the defendant "is, or was at the time the offense was committed, on . . . probation or parole for any offense under Federal, State, or local law; . . . and . . . such person may flee or pose a danger to any other person or the community," the Court "shall order the detention of [the defendant], for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official . . . .  If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of [§ 3142], notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings."  18 U.S.C. § 3142(d)(1)(A)(iii).

**THE INDICTMENT**

The Indictment alleges that, on or about February 26, 2014, GIBSON made a false statement in application for a U.S. passport, in violation of 18 U.S.C. § 1542, and committed aggravated identity theft, in violation of 18 U.S.C. § 1028A.  In short, GIBSON fraudulently obtained a passport in 2014, using another person's identity, so that he could evade arrest and,

indeed, so that he could depart the United States, in violation of release conditions that had been imposed in a pending criminal prosecution in the Superior Court of the District of Columbia. The Indictment also alleges that, four years later, on or about May 24, 2018, GIBSON again made a false statement in application for a U.S. passport, in violation of 18 U.S.C. § 1542. Specifically, in applying for a U.S. passport using his true identity, GIBSON stated that he had not previously submitted an application for a passport, which he knew to be false.

## ARGUMENT

If convicted of the charges against him, GIBSON will face a significant period of incarceration. In addition, because GIBSON is currently serving a term of supervised release, he faces the possibility of additional incarceration if his supervised release is revoked. When GIBSON faced similar circumstances in 2011—that is, he faced criminal charges and the prospect of revocation of supervised release—he failed to appear as required and evaded justice for several years. He did so, in part, by committing crimes charged in this case—that is, he fraudulently obtained a U.S. passport using another person's identity. GIBSON was arrested on drug possession charges in 2014, and he went back to prison for several years, but his passport fraud and identity theft crimes went undetected. In 2017, approximately six months after his release from prison, he applied for a passport in his true name. It was because of the 2018 application that his earlier fraud was detected.

Here, notwithstanding GIBSON's decision to turn himself in to law enforcement, GIBSON has now been made aware that he faces the prospect of incarceration for his earlier passport fraud, the associated charge of aggravated identity theft, and an additional charge of making false statements on his most recent passport application. He also faces the possibility of additional incarceration for violating his current term of supervised release. These circumstances give rise

4

to the same incentives that led GIBSON to evade justice in the past.  Given GIBSON's past behavior in similar circumstances, the Government submits that there are no conditions or combination of conditions that will reasonably assure GIBSON's appearance, and he should therefore be detained under both 18 U.S.C. § 3142(e).

I.      **The Nature and Circumstances of the Charged Offenses—and GIBSON's Related Criminal History—Weigh Against Pre-Trial Release.**

*Relevant Criminal History & Multi-Year Evasion of Arrest*

On July 13, 2007, GIBSON (then 21 years old) was sentenced in D.C. Superior Court to 44 months in prison for several felony offenses, including assault with a dangerous weapon (Case No. 2005 FEL 3838).  He was released from prison on October 31, 2010, and began a three-year term of supervised release.

Less than one year later, on August 23, 2011, GIBSON was arrested.  He was charged in D.C. Superior Court with misdemeanor destruction of property and unlawful entry (Case No. 2011 CMD 16213) and released pending trial, which was scheduled for January 5, 2012.  In the meantime, on December 15, 2011, the U.S. Parole Commission issued a warrant for GIBSON's arrest, based on allegations that GIBSON had violated the terms of his supervised release.  He was not immediately arrested on the warrant.  Three weeks later, on January 5, 2012, GIBSON failed to appear for his misdemeanor trial, and a bench warrant issued for that failure to appear.

For nearly three years that followed, GIBSON evaded arrest on the two outstanding warrants.  The evidence in this case demonstrates that he did so, in part, by fraudulently assuming the identity of another person, who is referred to here by his initials, C.W., to protect his identity. On July 19, 2012, having obtained C.W.'s Social Security card and birth certificate, GIBSON used those documents to fraudulently obtain a D.C. Identification Card  (from the D.C. Department of Motor Vehicles) that bore GIBSON's image but contained C.W.'s name and other identifying

information.  One month later, on September 14, 2012, using C.W.'s Social Security card and the fraudulently-obtained D.C. identification card, and fraudulent paystubs, GIBSON leased an apartment in Capitol Heights, MD, in C.W.'s name.  (By mid-2014, GIBSON would accrue an unpaid balance on the apartment of more than $2,000, which would later be sent, under C.W.'s name, to a collection agency.)

*2014 Passport Fraud*

On February 26, 2014, GIBSON went to the U.S. Post Office at 900 Brentwood Road, NE, in Washington, D.C., and submitted an application for a U.S. passport in the name of C.W.  In support of his application, he submitted C.W.'s birth certificate and the fraudulently-obtained D.C. ID card (in C.W.'s name).  GIBSON's application included a photograph of himself, but the identifying information belonged to C.W., including C.W.'s name, date of birth, and Social Security number.  As a mailing address, however, GIBSON used an address that belonged to a person known to him—the maternal grandmother of GIBSON's children (that is, the mother of the mother of GIBSON's children).  Given the absence of any indication of fraud, the U.S. State Department issued the passport.

U.S. Customs and Border Patrol records show that, in early December of 2014, GIBSON and the mother of his children travelled together internationally, with GIBSON using the fraudulently-obtained passport.  Specifically, the records indicated that, on December 8, 2014, when GIBSON and the mother of his children returned to the United States, at St. Thomas in the U.S. Virgin Islands, GIBSON presented the fraudulently-obtained "C.W." passport as his identification.

*2014 Arrest, Convictions, and Revocation of Supervised Release*

Less than a week later, on December 14, 2014, GIBSON was arrested in Washington,

D.C., for possession with intent to distribute ("PWID") heroin and cocaine.  Police reports

indicate that, when arrested, GIBSON identified himself, or was identified as, C.W.  Indeed, he

was subsequently indicted by a D.C. Superior Court grand jury as "Donzell Gibson, also known

as [C.W.]" for one count of PWID heroin and one count of PWID cocaine, both offenses

committed while on release (Case No. 2014 CF2 21430).  GIBSON was separately charged by

information in D.C. Superior Court for his failure to appear for his misdemeanor trial in January

of 2012 (Case No. 2014 CMD 21419).  At the time, notwithstanding GIBSON's apparent

association with the name of "C.W.," GIBSON's fraudulent acquisition of the "C.W." passport

remained undetected.

GIBSON pled guilty to the PWID heroin and failure-to-appear charges.  (His 2012

misdemeanor destruction of property and unlawful entry case and the PWID cocaine charge were

dismissed as part of a plea agreement.)  On May 19, 2015, GIBSON was sentenced to 12 months

in prison, to be followed by 18 months of supervised release.  Still unresolved, however, was the

matter of GIBSON's failure to comply with his earlier term of supervised release (in D.C.

Superior Court Case No. 2005 FEL 3838) and his multi-year evasion of the U.S. Parole

Commission's warrant.

On May 9, 2016, the U.S. Parole Commission, based on GIBSON's PWID heroin and

failure-to-appear convictions, revoked GIBSON's supervised release and imposed 36 months of

incarceration (with 12 months of credit for time served).  Noting that GIBSON would face a new

18-month term of supervised release upon his eventual release, the Parole Commission stated

that it was not imposing an additional term of supervised release in 2005 FEL 3838 as part of its

revocation decision.

GIBSON was eventually released on December 8, 2017, and he thereafter began his 18-

month term of supervised release, which is still pending.  As noted above, based on information

provided to the Government by the U.S. Probation Officer responsible for GIBSON's

supervision, GIBSON has generally complied with the conditions of his supervision since his

release.

*2018 Passport Application & the Investigation in this Case*

On May 28, 2018, GIBSON returned to the U.S. Post Office on Brentwood Road, NE,

and applied for a U.S. passport in his true name, providing a photograph of himself, a recently-

obtained D.C. Driver's License in his true name, and a true copy of his own birth certificate.

Where the application required that GIBSON list "all other names you have used," GIBSON did

not list any.  Where the application required GIBSON to indicate whether or not he had ever

applied for or been issued a U.S. passport, GIBSON indicated that he had not.

When the photograph submitted by GIBSON in his 2018 application was run through the

State Department's facial-recognition program, the program noted a potential match between the

2018 photograph of GIBSON and the photo submitted in 2014 for a passport issued in the name

of C.W.  Indeed, it was GIBSON's image in both photographs.  Subsequent investigation

revealed that GIBSON fraudulently obtained the 2014 passport in C.W.'s name and that his 2018

passport application, though submitted in his true name, contained false statements.

## II.     The Weight of the Evidence is Strong and Weighs against Release, as Does GIBSON's Criminal History.

The evidence in his case includes, among other things, documents showing: GIBSON's

criminal history, which establishes the motive for GIBSON's crimes; his fraudulent acquisition of

a D.C. Identification Card under C.W.'s name; his 2014 fraudulent application for and acquisition

of a U.S. passport under C.W.'s name; his travel with the mother of his children while using the

"C.W." passport; his use of C.W.'s identity to lease an apartment, corroborating the charged

8

offenses; and his 2018 U.S. passport application and supplemental submissions in support of that application. These documents alone tell the story of GIBSON's efforts to evade justice and to do so, in part, by fraudulently obtaining a U.S. passport under the name of another person.

As explained above, GIBSON's criminal history is significant, and it includes a conviction for failing to appear for trial in a criminal case and revocation of a term of supervised release for failure to comply with the terms of that release. Where the Court must determine if conditions or combinations of conditions will reasonably assure GIBSON's appearance, this background weighs against release and in favor of detention.

## CONCLUSION

For the above reasons, the defendant should be detained pending trial pursuant to 18 U.S.C. § 3142(e). As noted above, should the Court disagree, the Government would request that the Court continue to temporarily detain the defendant, under 18 U.S.C. § 3142(d)(1)(A)(iii), for a ten-day period beginning on the day of his initial appearance (March 27, 2019) and excluding Saturdays, Sundays, and holidays—that is, until April 10, 2019—to allow the U.S. Parole Commission an opportunity to take GIBSON into custody.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
for the District of Columbia


By: _____/s/_____
LUKE M. JONES
Assistant United States Attorney
555 4th Street, NW, 11th Floor
Washington, D.C. 20530
(202) 252-7066
Luke.Jones@usdoj.gov